MARY C. DOLLARHIDE (Bar No. 138441)
mary.dollarhide@dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Tele: 858.677.1400
Fax: 858.677.1401

BETSEY BOUTELLE (Bar No. 299754)
betsey.boutelle@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tele: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendant
CUSHFIELD MAINTENANCE WEST
CORP., erroneously sued as CUSHMAN
MAINTENANCE WEST CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VERNON NELLIS,<br><br>   Plaintiff,<br><br>v.<br><br>CUSHMAN MAINTENANCE WEST CORPORATION,<br><br>   Defendant | CASE NO. 5:18-cv-03946-LHK<br><br>**MOTION TO ENFORCE SETTLEMENT AGREEMENT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS SETTLEMENT AGREEMENT BY DEFENDANT**<br><br>Date: June 13, 2019<br>Time: 1:30 p.m.<br>Crtrm: 8 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO ENFORCE ........................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

I. INTRODUCTION ................................................................................... 2

II. FACTS PRESENTED AT THE SETTLEMENT CONFERENCE ................ 3

III. EVALUATION OF PLAINTIFF'S CLAIMS ................................................ 5

IV. ARGUMENT ............................................................................................ 6

    A. California Contract Law Applies to Enforcement of Settlement Agreements ........................................................................................... 7

    B. The Terms and Circumstances of the Parties' Written Settlement Agreement Establish Mutual Consent ..................................................... 8

    C. Plaintiff's Allegations of Fraud, Duress and Mistake are Unfounded and Cannot Undo the Settlement Agreement. ................... 12

V. CONCLUSION ...................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Adams v. Johns–Manville Corp.*,
876 F.2d 702 (9th Cir. 1989) ........................................................................................... 7

*Chan v. Lund*,
188 Cal. App. 4th 1159 (2010) ................................................................................. 12, 13

*Ciampi v. City of Palo Alto*,
No. 09-CV-02655-LHK, 2011 WL 4915785 (N.D. Cal. Oct. 17, 2011) ........................................................................................................................... 6

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
640 F.3d 1034 (9th Cir. 2011) ........................................................................................ 7

*Morey v. Vannucci*,
64 Cal. App. 4th 904 (1998) ..................................................................................... 8, 10

*Pizza v. Fin. Indus. Regulatory Auth., Inc.*,
No. 13-CV-0688 MMC (NC), 2015 WL 1383142 (N.D. Cal. Mar. 19, 2015) ................................................................................................................. 6, 7

*Rosenblum v. Safeco Ins. Co.*,
126 Cal. App. 4th 847 (2005) ....................................................................................... 14

*Stewart v. Preston Pipeline Inc.*,
134 Cal. App. 4th 1565 (2005) .............................................................................. 7, 9, 10

*Wilcox v. Arpaio*,
753 F.3d 872 (9th Cir. 2014) ..................................................................................... 2, 7

**STATUTES**

9 U.S.C § 206 ...................................................................................................................... 5

9 U.S.C § 207 ...................................................................................................................... 5

Cal. Lab. Code § 98.1 .......................................................................................................... 4

**OTHER AUTHORITIES**

Fed. R. Evid. 408 ................................................................................................................ 2

Ruling on Motion to Enforce Settlement, *Gray, Plaintiff, pro se v. Noble Group, Ltd, et. al.,* Civil No. 3:10-cv-1652 (JBA) (D. Conn. Aug. 30, 2011) ........................................................................................................ 12

-iii-
MOTION TO ENFORCE SETTLEMENT AGMT AND OPPOSITION TO MOTION TO DISMISS
CASE NO. 5:18-CV-03946-LHK

DLA Piper LLP (US)
San Diego

EAST\164941192.4

# NOTICE OF MOTION AND MOTION TO ENFORCE

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2019 at 1:30 p.m. before the Honorable Lucy Koh in Courtroom 8, 4th Floor, of the United States District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California, 95113, Defendant CUSHFIELD MAINTENANCE WEST CORP., erroneously sued as CUSHMAN MAINTENANCE WEST CORPORATION ("Defendant"), will and hereby does move for entry and enforcement of the parties' settlement agreement. Defendant thus respectfully requests that the Court grant its Motion to Enforce the Settlement Agreement ("Defendant's Motion to Enforce") and deny Plaintiff's "Motion to Dismiss Settlement Agreement" ("Plaintiff's Motion to Dismiss") on the grounds detailed below. Defendant's Motion to Enforce and opposition to Plaintiff's Motion to Dismiss are supported by the Memorandum of Points and Authorities, Declarations submitted in support thereof, and all oral testimony/argument presented at the hearing.

Dated:   March 1, 2019

DLA PIPER LLP (US)

By  /s/ Mary Dollarhide
MARY DOLLARHIDE
BETSEY BOUTELLE

Attorneys for Defendant
CUSHFIELD MAINTENANCE WEST CORP.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Cushfield Maintenance West Corporation, erroneously sued as Cush*man* Maintenance West Corporation ("Defendant" or "the Company"), for itself and no other party, hereby moves to enforce the written settlement agreement facilitated by Magistrate Judge Nathanael Cousins on January 31, 2019. On that date, pursuant to this Court's Orders dated November 27, 2018 and December 20, 2018, the Parties convened for a settlement conference with Judge Cousins.[1] The Company was represented by Stephanie Mercer, Deputy General Counsel of Cushman & Wakefield, Inc. and Mary Dollarhide of DLA Piper. *See* Declaration of Mary Dollarhide in Support of Defendant's Motion to Enforce the Settlement Agreement and Opposition to Plaintiff's Motion to Dismiss Settlement Agreement ("Dollarhide Decl."), ¶ 5. Plaintiff Vernon Nellis ("Plaintiff" or "Nellis") appeared pro se, after representing himself before the California Labor Commissioner and the Department of Fair Employment and Housing ("DFEH"), and after representations to this Court in September and October of 2018 that he had been unable to retain counsel. *Id.* at ¶ 6.

The settlement conference was scheduled to commence at 9:30 a.m. Judge Cousins began with a brief joint session wherein he outlined the settlement conference process. *See Id.* at ¶ 7. He explained that the parties would be situated

---

[1] Because the matter involves federal claims, the law governing settlement communications is that under Federal Rule of Evidence 408 and not state law. *See Wilcox v. Arpaio*, 753 F.3d 872, 876-77 (9th Cir. 2014) (stating that where both federal and state claims are involved, "federal common law generally governs claim of privilege"). As such, evidence related to the circumstances of the settlement conference and the communications therein may be used to enforce the settlement agreement. Moreover, the agreement specifically contemplated the disclosure of its terms for enforcement purposes. *See* Dollarhide Decl., Ex. C (Settlement Agreement and General Release of Claims fully executed ("settlement agreement")) at § 3(l).

in different spaces during the day and that he would move back and forth to communicate settlement positions. *Id.* Information provided by one side would not be presented to the opposing party without express permission. *Id.* By the end of the day, Judge Cousins recommended a settlement number, which each side accepted. *Id.* at ¶ 10.

The complete terms and conditions of the settlement, including the preparation of a neutral letter of reference and the provision of a Human Resources contact for future employer inquiries, were set forth in a settlement agreement finalized that same day in the presence of Judge Cousins. Dollarhide Decl. ¶ 11. Both parties signed the document, and the proceedings concluded after 6.5 hours, at approximately 4 p.m. *Id.* at ¶¶ 11-12. That evening at 10:51 p.m., a Notice of Electronic Filing was posted by Magistrate Judge Cousins as follows: "Minute Entry for proceedings held before Judge Nathanael M. Cousins. Settlement conference held on 1/31/19: Case settled; dismissal to be filed." (Dkt. 35).

Pursuant to the settlement agreement, Defendant thereafter requested Mr. Nellis' signature on dismissal papers to be filed at the Court. Dollarhide Decl. at ¶ 15. Plaintiff failed to respond to multiple attempted contacts. *Id.* More than two weeks elapsed when he filed a "Motion to Dismiss" the above-referenced settlement. (Dkt. 36). Defendant now moves to enforce the written settlement agreement signed by Plaintiff, and opposes Plaintiff's Motion to Dismiss.

Below is a summary of the facts and analysis of the claims as they were presented to Magistrate Judge Cousins at the settlement conference, and in the Defendant's Settlement Conference Statement.

## II. FACTS PRESENTED AT THE SETTLEMENT CONFERENCE

Following his separation from the Company, Plaintiff filed an individual wage and hour claim with the California Labor Commissioner's Office on or around March 18, 2016, alleging violations of the California state labor laws governing overtime, minimum wages, meal and rest periods, and payment of all

wages due on termination. Around this time, Plaintiff also filed a claim with the DFEH alleging discriminatory treatment and/or a hostile work environment.

On January 17, 2017, a hearing was held in the San Jose Office of the Labor Commissioner on Plaintiff's wage-hour claims. An "Order, Decision, or Award of the Labor Commissioner" was issued on Plaintiff's claim on January 30, 2017 ("Labor Commissioner Order"). *See* Dollarhide Decl. ¶ 2, Ex. A (Copy of Labor Commissioner's Order issued on January 30, 2017). Therein, Plaintiff was awarded $195.22 in unpaid overtime and double premium wages, along with $22.30 as interest pursuant to California Labor Code § 98.1, for a total award of $217.52. *See id.* The Labor Commissioner determined that Plaintiff should take nothing in connection with his meal period, rest period, liquidated damages, and waiting time penalty claims.

In February 2017, Plaintiff sought a trial de novo and appealed the Labor Commissioner Order in the Superior Court of California, County of Santa Clara. *See Nellis v. Cushfield Maintenance West Corp., et al.*, Case No. 17CV306630 (the "Related Action").[2]

Meanwhile, the DFEH closed Plaintiff's discrimination case for "Insufficient Evidence" and issued Plaintiff a Notice of Right to Sue on April 7, 2017. *See* Dkt. 1-1, Ex. 12. That notice stated that any claim brought pursuant to federal discrimination laws would need to be filed within 90 days. *Id.*

On or around September 5, 2017, Plaintiff commenced a second action against Defendant—this action—also in the Superior Court of California, County of Santa Clara, in his complaint entitled *Vernon Nellis, Plaintiff, v. Cushman Maintenance West Corp., Defendant*, Case No. 17CV315508. *See* Dkt. 1. Plaintiff's new complaint re-alleged various claims for violations of the California Labor Code, but now indicated that Plaintiff would seek to certify those claims for

---

[2] Defendant is represented by separate counsel in that proceeding.

1  class treatment.  Plaintiff also added a putative collective action claim for violations
2  of the federal Fair Labor Standards Act, 9 U.S.C §§ 206 and 207.  The new
3  complaint also asserted individual claims, including alleged violations of Title VII
4  and the Americans with Disabilities Act, purported age discrimination, and
5  violations of the California Government Code.  Plaintiff never perfected service of
6  the new complaint on Defendant in accordance with California law.  *See generally*
7  Dkt. 1 (Notice of Removal).

On July 2, 2018, after waiving service of process by entering a general appearance in the underlying state court action, Defendant timely removed the action to this U.S. District Court on the basis of federal question jurisdiction.  *See* Dkt. 1.

## III. **EVALUATION OF PLAINTIFF'S CLAIMS**

As noted in the settlement conference, Plaintiff would not be permitted to pursue a class or collective action on his wage claims without the assistance of class counsel. And the California Labor Commissioner has already evaluated the merits of several of Plaintiff's Labor Code claims on an individual basis and found them lacking.  *See generally* Dollarhide Decl., Ex. A (Order, Decision, or Award of the Labor Commissioner dated January 17, 2017).  For example, the Labor Commissioner awarded Plaintiff a total of 6.64 hours of allegedly uncompensated overtime wages, plus interest, which Defendant did not contest at the hearing.  *See* Dollarhide Decl., Ex. A at 5.  But a total of the Commissioner noted that:

> Plaintiff was responsible for entering his hours worked. Plaintiff admitted sometimes he forgot to enter his overtime hours.  Plaintiff did not submit records of overtime hours to Defendant worked [sic] (by means of an evidentiary exhibit) until the date of the hearing. Defendant had no way of conceding or contesting the claimed amount until the hearing.  Accordingly, … Plaintiff shall take nothing as liquidated damages.

*See id.* at 8.

/////

1  The Labor Commissioner also found that Plaintiff had not established violations of California's meal period requirements:

> … Defendant regularly discussed employees' obligation to take meal periods at its group meetings. [Plaintiff's manager] regularly reminded employees to take meal periods. Coworker Alcazar testified he never had an issue taking a meal period. Defendant has a form for employees to submit if they miss a meal period or take a late meal period so that they can be paid premium pay. Based on these facts, Defendant has met its obligation to provide meal periods, and Plaintiff shall take nothing as meal period premiums.

*See id.* at 6.

With respect to rest periods, the Labor Commissioner found that:

> Employees were reminded to take rest periods at staff meetings. Several break rooms are available. While Plaintiff may have worked through some rest periods, Plaintiff has not met his burden [to show that] he was not authorized and permitted rest periods. Accordingly, Plaintiff shall take nothing as rest period premiums.

*See id.* at 7.

As to Plaintiff's Individual Clams, Plaintiff did not file until nearly five months after the DFEH's Notice of Right to Sue was issued. Had litigation continued, Plaintiff likely would have faced a statute of limitations challenge on at least some of his claims.

## IV. ARGUMENT

"Settlement agreements are designed to end litigation, not create it." *Pizza v. Fin. Indus. Regulatory Auth., Inc.*, No. 13-CV-0688 MMC (NC), 2015 WL 1383142, at *1 (N.D. Cal. Mar. 19, 2015) (decision by M.J. Nathanael Cousins). As such, the "Court has inherent power to summarily enforce a settlement agreement in a case pending before it." *Ciampi v. City of Palo Alto*, No. 09-CV-02655-LHK, 2011 WL 4915785, at *2 (N.D. Cal. Oct. 17, 2011) (decision by Judge Lucy Koh). "A motion to enforce a settlement agreement 'essentially is an action

/////

to specifically enforce a contract.'" *Pizza*, 2015 WL 1383142, at *1 (quoting *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989)).

### A. California Contract Law Applies to Enforcement of Settlement Agreements

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. Such intent is to be inferred, if possible, solely from the written provisions of the contract. If contractual language is clear and explicit, it governs." *Pizza*, 2015 WL 1383142, at *2 (internal quotation marks and citations omitted). "In order to best effectuate the intention of the parties in settling the case, the Court aims to give both parties the benefit of their bargain." *Id.; see also Facebook, Inc. v. Pac. Nw. Software, Inc.,* 640 F.3d 1034, 1038 (9th Cir. 2011) (enforcing written settlement agreement).

When a complaint encompasses both federal and state law claims, as does the complaint filed by Plaintiff here, "state contract law governs whether they reached an enforceable agreement settling the federal and state law claims alleged in Plaintiffs' complaint." *Wilcox*, 753 F.3d at 876; *see also Pizza,* 2015 WL 1383142, at *1 (applying California substantive law to enforcement of settlement agreement).

Under California law, the party seeking to enforce the contract has "the burden of establishing each contractual element—[1] parties who are capable of entering into contract, [2] their mutual consent, [3] a lawful object, and [4] sufficient cause or consideration in support of their motion." *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585–86 (2005) (internal quotation marks and citations omitted) (finding that the settlement agreement at issue "identified the parties, facially evidenced mutual consent, had a lawful object of resolving litigation, and contained mutual promises (sufficient consideration)"). In addition to the factors articulated in *Stewart*, California courts also consider "the surrounding circumstances under which the parties negotiated or entered into the

/////

contract" and "the subsequent conduct of the parties" as part of the contract formation analysis. *See Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998).

### B. The Terms and Circumstances of the Parties' Written Aettlement Agreement Establish Mutual Consent

As ordered by this Court, the parties attended a settlement conference before Magistrate Judge Cousins on January 31, 2019. Dollarhide Decl. ¶¶ 4-5. The conference commenced at 9:30 a.m. and concluded at approximately 4:00 p.m., which time span included a break for lunch. *Id.* at ¶¶ 7, 12. As noted above, Magistrate Judge Cousins held a brief joint session during which he explained that the parties would be situated in different spaces during the day, that he would move back and forth to communicate settlement positions, and that information provided by one side would not be presented to the opposing party without express permission. *Id.* at ¶ 7. Magistrate Judge Cousins then spent approximately 2 hours with Plaintiff, and did not meet substantively with Defendant until after lunch. *Id.* at ¶ 8. After communicating proposed settlement numbers between the two parties throughout the afternoon, Magistrate Judge Cousins proposed a settlement number to both Plaintiff and Defendant. *Id.* at ¶ 9. At some point, Plaintiff expressed concerns about his reputation and potential negative reports to prospective employers. As additional consideration, Defendant offered to prepare a neutral letter of reference for Plaintiff. Defendant also offered to supply Plaintiff with an exclusive point of contact in the Human Resources Department to whom he might direct all inquiries regarding his employment history. This person would not supply information beyond dates of service, salary, and position held. *Id.*

Both parties ultimately agreed to Magistrate Judge Cousins' proposed settlement number, the preparation of the neutral reference letter, and identification of a Human Resources contact. The parties than signed a written settlement

/////

/////

DLA PIPER LLP (US)
SAN DIEGO

EAST\164941192.4

agreement documenting all the negotiated terms in the presence of Magistrate Judge Cousins. *Id.* at ¶ 11, Ex. C.[3]

All parties to this action freely entered in the agreement facilitated by Magistrate Judge Cousins. Plaintiff communicated his demands, Defendant responded, Plaintiff made counter-demands—all through Magistrate Judge Cousins. Dollarhide Decl. ¶ 9. After a series of back-and-forths, Magistrate Judge Cousins ultimately recommended a settlement number which both sides accepted. *Id.* at ¶ 10.

As was the case with the parties at issue in *Stewart*, the parties' executed settlement agreement establishes all that is required under California law to demonstrate the mutual intention of the parties and an enforceable contract. The Agreement:

1) <u>Identified the parties</u>: Cushfield Maintenance West Corporation (erroneously sued as Cushman Maintenance West Corporation) and Vernon Nellis. Dollarhide Decl., Ex. C, p. 1.

2) <u>Evidenced mutual consent</u>: The terms were prefaced with "The Company and I agree as follows" and both parties demonstrated their assent with their signatures on page 9. Dollarhide Decl., Ex. C, p. 9. Furthermore, in section 5 of the settlement agreement with the heading "Consideration of Agreement," Plaintiff represented that he "was given a reasonable period of time in which to consider this Agreement," that he "carefully read this Agreement," and that he was "entering into it voluntarily." *Id.* at § 5.

3) <u>Has a lawful object</u>: The object of this contract was to resolve pending litigation, which is a lawful reason to enter into a contract. *See Stewart*, 134 Cal. App. 4th at 1585–86. As stated in the settlement agreement, the parties "have entered into this Settlement Agreement and General Release of Claims

---

[3] The terms of the settlement agreement state that, although the Agreement is to be kept confidential, it does not "prohibit disclosures to the extent necessary legally to enforce this Agreement . . . ."). Dollarhide Decl., Ex. C, § 3(l).

("Agreement") to settle all known and unknown claims [Plaintiff] might have against Company and all related parties, including all claims asserted in the lawsuit . . . Case No. 5:18-cv-03946 . . . ." Dollarhide Decl., Ex. C, p. 1.

4) <u>Has sufficient consideration</u>**:** The settlement agreement makes clear that Defendant was to pay a certain sum of money to Plaintiff, in exchange for a voluntary dismissal with prejudice and release of all claims. *Id.* at §§ 1(a), 2(b). Further, Plaintiff agreed that he was "receiving valuable consideration in exchange for [his] execution of this Agreement that [he] would not otherwise be entitled to receive." *Id.* at § 5. Plaintiff signed the settlement agreement under the penalty of perjury. *Id.* at p. 9. The "*Stewart* factors" are thus satisfied.

The circumstances under which the agreement was entered further supports enforcement of the settlement agreement. *See Morey*, 64 Cal App. 4th at 912. As explained above, the parties agreed to terms during a settlement conference facilitated by a sitting federal Magistrate Judge. After a short joint session, the parties were split into separate locations and never exchanged any more than pleasantries the entire day. Dollarhide Decl. ¶¶ 8-9, 13. All substantive communications regarding the parties' respective positions, arguments, offers and counter-offers where handled exclusively by and through Magistrate Judge Cousins.[4] *Id.* at ¶ 9. Moreover, Magistrate Judge Cousins spent nearly 2 hours with Plaintiff before ever meeting with Defendant's representative and defense counsel to discuss the case or the parties' respective settlement positions. *Id.* at ¶ 8. At no time was there any suggestion that Plaintiff was incapable or unwilling to settle on the terms negotiated. *Id.* at ¶¶ 11, 13. Given the circumstances—in particular the involvement of a sitting Federal Magistrate with an understanding of

---

[4] Plaintiff admits this in his Motion to Dismiss: "[A]t no time were the merits of the case discussed directly between the Defense Counsel and the Plaintiff." *See* Dkt. 36, p. 13:20-21. Plaintiff also indicates that he told Magistrate Judge Cousins very early in the day that he was "willing to settle" the case. *Id.* at p. 13:21-23.

the claims at issue—enforcement of the written agreement is proper.

Lastly, the subsequent conduct of the parties supports enforcement of the settlement entered into on January 31, 2019. Defendant promptly sent to Plaintiff the request for dismissals he agreed to execute as part of the written settlement agreement, and attempted to follow up several times regarding such. Dollarhide Decl. ¶ 15, Ex. C § 2(b). Plaintiff made no response, but more than two weeks later came forward with a belated "Motion to Dismiss" the agreement. But in doing so he acknowledged that a settlement agreement had indeed been executed. Plaintiff made no claim that an agreement was never reached, nor did he claim that none was signed.

Both Parties had good reason to enter into the settlement agreement. As stated in Defendant's Settlement Conference Statement sent to Magistrate Judge Cousins, Plaintiff cannot litigate a class action without a class action attorney, which he has not been able to obtain despite representations that he has spoken to multiple attorneys about his case. Dollarhide Decl. ¶ 6. Additionally, at least two agencies have substantively reviewed Plaintiff's claims – the Labor Commissioner at the Division of Labor Standards Enforcement and the California Department of Fair Housing and Employment – and found his claims to be without merit. Therefore, it was reasonable for Plaintiff to settle at this point in time.

As for Defendant, it was required to engage legal counsel with respect to multiple agency and court actions, including one asserting class action claims. As confident as Defendant was in its legal position, fees and costs of defending even frivolous lawsuits can be significant. Thus, agreeing to a settlement provided finality and the ability to reduce legal costs for Defendant.

In short, all parties had good reason to settle. Their words and acts during the January 31 proceedings—which Magistrate Judge Cousins heard and observed directly—exhibit that they mutually assented to the final terms of an enforceable

settlement agreement that satisfied all their objectives.[5]  All parties remain bound by the written settlement agreement forged with the assistance of Magistrate Judge Cousins on January 31, 2019.

### C. Plaintiff's Allegations of Fraud, Duress and Mistake are Unfounded and Cannot Undo the Settlement Agreement.

The parties reached a binding settlement on January 31, 2019, which Magistrate Judge Cousins personally witnessed and which was confirmed in writing through a final settlement agreement complete with a settlement amount, a neutral reference letter drafted and approved, and a Human Resources contact supplied to Plaintiff.  *See* Dollarhide Decl. Ex. C.  No further action was required to make the agreement binding.  The only reason Plaintiff has requested that the settlement be unwound is because he has had a change of heart.  Such circumstances are not sufficient to allow Plaintiff to repudiate the parties executed settlement agreement.

Plaintiff alleges that he felt that he was under "duress" to settle.  *See* Dkt. 36, p. 14:14.  To undo a contract on the basis of duress, one must show "the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure" and "*must emanate from the opposing party* to an agreement . . . unless the opposing party knows of the duress." *Chan v. Lund*, 188 Cal. App. 4th 1159, 1174-75 (2010), as modified on denial of reh'g (Oct. 28, 2010) (emphasis added) (internal quotations and citations omitted).  Here, Defendant and Defense counsel had zero substantive contact with Plaintiff during the course of the entire settlement

---

[5] If it would assist the Court, it may be helpful to conduct an evidentiary hearing, which may include testimony from Magistrate Judge Cousins, who was the sole witness to Plaintiff's competence and demeanor during the court of the settlement conference. *See* Ruling on Motion to Enforce Settlement, *Gray, Plaintiff, pro se v. Noble Group, Ltd, et. al.,* Civil No. 3:10-cv-1652 (JBA) (D. Conn. Aug. 30, 2011) (enforcing oral settlement agreement facilitated by federal Magistrate Judge after evidentiary hearing at which Magistrate Judge Joan Glazer Margolis testified).

1  conference. Dollarhide Decl. ¶¶ 9, 13. Indeed, Plaintiff admits that "at no time
2  were the merits of the case discussed directly between the Defense Counsel and the
3  Plaintiff." *See* Dkt. 36, p. 13:20-21. As such, Defendant—the "opposing party"—
4  simply could not have caused Plaintiff any duress, per *Chan*. Further, there was no
5  indication to Defendant of any duress in the adjacent room at any time during the
6  January 31, 2019 settlement conference. *See* Dollarhide Decl. at ¶ 13. In fact, by
7  his own admission, Plaintiff had indicated to Magistrate Judge Cousins early on in
8  the process he was "willing to settle" his case. *See* Dkt. 36, p. 13:21-22. An
9  individual who indicates that he would be willing to settle, then signs a written
10 settlement agreement after the negotiation of terms communicated through a sitting
11 Federal Magistrate, simply cannot credibly claim duress after the fact.

   Plaintiff relies on double hearsay to claim that there was mistake of fact and mistake of law. He references information given to him by Magistrate Judge Cousins regarding a statute of limitations defense, an issue reportedly raised by Defense counsel. There is no evidence that such information was presented as described by Plaintiff. Nor is there evidence of any mistake of law. At bottom, Plaintiff's right to sue notice from the DFEH explicitly states that he was to file any claims concerning Title VII, ADA, or age discrimination within 90 days of receipt. *See* Dkt. 1-1, Ex. 12. His lawsuit was filed nearly 5 months later. Had litigation continued, a dispute regarding the timeliness of certain claims would have ensued.

   Lastly, Plaintiff alleges that there was "a fraud perpetrated on the court by the Defense counsel." *See* Dkt. 36, p. 15:3-4. But given that Plaintiff was not party to any of the substantive discussions between Defendant, its counsel and the Court, the allegation appears to be entirely without basis, and therefore brought in bad faith.

   As shown above, Plaintiff has no reasonable grounds to claim he was under duress or mistaken belief regarding the terms of the settlement agreement. He listened to Defendant's offer and terms as presented by Magistrate Judge Cousins, voluntarily countered with his own demands, and after several back-and-forths,

signed the settlement agreement presented to him by a Judge Cousins. If Plaintiff developed a misunderstanding at some point in the negotiations, he failed to make it apparent to Defendant. Without more, Plaintiff's claims of duress, mistake of law, and fraud cannot undo the agreement. *See Rosenblum v. Safeco Ins. Co.*, 126 Cal. App. 4th 847, 859, (2005) (finding that a settlement agreement was enforceable because Plaintiff did not provide any persuasive evidence to support her claims of fraud and duress and it was shown that these claims were false).

Plaintiff's regrets are of no legal consequence to the validity of the settlement agreement reached by the parties on January 31. Under the supervision of Magistrate Judge Cousins, a bargain was struck; a meeting of the minds took place. Plaintiff is bound, and the agreement cannot be undone. Defendant therefore, respectfully requests that the Court enforce the settlement agreement and deny Plaintiff's Motion to Dismiss.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

(i) grant its Motion to Enforce the settlement agreement;

(ii) deny Plaintiff's Motion to Dismiss settlement agreement; and

(iii) order Plaintiff to execute and return, within two court days of this Order, the Joint Stipulation of Dismissal With Prejudice to Defendant's counsel for filing with this Court.

Dated: March 1, 2019            DLA PIPER LLP (US)

                                By  /s/ Mary Dollarhide
                                MARY DOLLARHIDE
                                BETSEY BOUTELLE

                                Attorneys for Defendant
                                CUSHFIELD MAINTENANCE WEST CORP.