UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERNON NELLIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CUSHFIELD MAINTENANCE WEST CORP.,<br><br>　　　　　Defendant. | Case No. 18-CV-03946-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS SETTLEMENT AGREEMENT; GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND ORDERING PLAINTIFF TO EXECUTE AND RETURN THE JOINT STIPULATION OF DISMISSAL WITH PREJUDICE TO DEFENDANT'S COUNSEL**<br><br>Re: Dkt. Nos. 36, 42 |

Before the Court is a motion to dismiss the parties' settlement agreement filed by Plaintiff Vernon Nellis ("Plaintiff"), ECF No. 36 ("MTD"), and a motion to enforce the parties' settlement agreement filed by Defendant Cushfield Maintenance West Corp., erroneously sued as Cushman Maintenance West Corporation ("Defendant"). ECF No. 42 ("MTE"). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendant's motion to enforce and DENIES Plaintiff's motion to dismiss.

Pursuant to the settlement agreement, the Court orders that Plaintiff execute and return, by

1

July 8, 2019, the Joint Stipulation of Dismissal with Prejudice to Defendant's counsel for filing with this Court. By July 10, 2019, Defendant shall file notice with the Court of Plaintiff's compliance or noncompliance with the instant Order. If Plaintiff fails to comply with the instant Order and the settlement agreement, the Court will sua sponte dismiss Plaintiff's case with prejudice.

## I.     BACKGROUND

On or around March 18, 2016, Plaintiff filed an individual claim pro se with the California Labor Commissioner's Office ("Labor Commissioner") and alleged violations of the California state labor laws governing overtime, minimum wages, meal and rest periods, and payment of all wages due on termination. ECF No. 42-1 ("Dollarhide Decl.") ¶ 2. On January 17, 2017, a hearing was held in the San Jose Office of the Labor Commissioner on Plaintiff's claims. *Id.* On June 30, 2017, an "Order, Decision, or Award of the Labor Commissioner" was issued. *Id.*; *see also* ECF No. 42-2 at Ex. A ("Labor Commissioner Order"). The Labor Commissioner awarded Plaintiff $195.22 in unpaid overtime and double premium wages, along with $22.30 for interest pursuant to California Labor Code § 98.1, for a total award of $217.52. *See* Labor Commissioner Order. The Labor Commissioner determined that Plaintiff should take nothing in connection with his meal period, rest period, liquidated damages, and waiting time penalty claims. *Id.*

On February 22, 2017, Plaintiff appealed pro se the Labor Commissioner Order in the Superior Court of California, County of Santa Clara. *See Nellis v. Cushfield Maintenance Corp., et al*, Case No. 17CV306630 (the "Related Action").

On April 7, 2017, the Department of Fair Employment and Housing ("DFEH") closed Plaintiff's pro se discrimination case for the following reason: "Investigated and Dismissed – Insufficient Evidence." ECF No. 1-1, Ex. 12. The DFEH also issued Plaintiff a Notice of Right to Sue. *Id.* The notice stated that any claim brought pursuant to federal discrimination laws, including Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), the Genetic

Information Nondiscrimination Act ("GINA"), or the Age Discrimination in Employment Act ("ADEA"), would need to be filed within 90 days of the date Plaintiff received the notice. *Id.*

Almost five months later, on September 5, 2017, Plaintiff filed a second pro se action against Defendant—the instant putative class action—in the Superior Court of Santa Clara County and asserted, among other claims, various claims for violations of the California Labor Code, violations of the federal Fair Labor Standards Act, violations of Title VII and the Americans with Disabilities Act, age discrimination, and violations of the California Government Code. ECF No. 1-1. On July 2, 2018, Defendant removed the case to this federal Court. ECF No. 1. On July 2, 2018, Defendant also filed its answer to Plaintiff's pro se complaint. ECF No. 1-2.

On September 26, 2018, the parties filed a joint case management statement, and Plaintiff acknowledged that he had been unable to retain counsel for his putative class action. ECF No. 20. On October 31, 2018, the parties filed a second joint case management statement, and Plaintiff again acknowledged that he had been unable to retain counsel for his putative class action. ECF No. 26.

On November 2, 2018, the Court referred the parties to a settlement conference with United States Magistrate Judge Nathanael Cousins and stayed the case. ECF No. 28.

The parties participated in a settlement conference with Judge Cousins on January 31, 2019. ECF No. 35. The settlement conference was scheduled to begin at 9:30 a.m. ECF No. 32. Mary Dollarhide, attorney for Defendant, attended the settlement conference, and Plaintiff appeared pro se. Dollarhide Decl. ¶¶ 5–6. Stephanie Mercer, Deputy General Counsel of Cushman & Wakefield, Inc., resident in Defendant's Dallas, Texas officer, also attended as the Company representative. Defendant submitted the above described facts and procedural history of Plaintiff's case, including the Labor Commissioner Order, in the Defendant's settlement conference statement and presented them to Judge Cousins at the settlement conference. MTE at 3.

Judge Cousins began with a brief joint session where he outlined the settlement conference

process. Dollarhide Decl. ¶ 7. Judge Cousins explained that the parties would be situated in different spaces during the day and that he would move back and forth to communicate settlement positions and that information provided by one side would not be presented to the opposing party without express permission. Dollarhide Decl. ¶ 7. Thus, as Plaintiff acknowledges, "at no time were the merits of the case discussed directly between the Defense counsel and the Plaintiff." MTD at 13.

Judge Cousins first met with Plaintiff in a conference room adjacent to the courtroom, while Ms. Dollarhide and Ms. Mercer waited in the courtroom. Dollarhide Decl. ¶ 8; MTD at 13. Plaintiff represents that during his conversation with Judge Cousins, Judge Cousins asked Plaintiff what he was looking for, and Plaintiff responded that "he was tired and would be willing to settle" as he found it difficult emotionally "to go through the notes on the case" and be reminded of his work situation. MTD at 13. Ms. Dollarhide estimated that Judge Cousins spent more than 2 hours meeting with Plaintiff. Dollarhide Decl. ¶ 8. At that point, Judge Cousins asked the parties to break for lunch and return at 1:30 p.m. *Id.*

After lunch, Judge Cousins met with Ms. Dollarhide and Ms. Mercer to discuss the substance of the case and the Defendant's settlement position. *Id.* Judge Cousins then alternated meeting with Plaintiff and Defendant and communicated each side's positions and proposed settlement numbers throughout the afternoon. Dollarhide Decl. ¶ 9. Plaintiff rejected Defendant's first two offers that were conveyed to him through Judge Cousins. MTD at 14.

At some point, Judge Cousins informed Ms. Dollarhide and Ms. Mercer that Plaintiff had expressed concerns about his reputation and potential negative reports to prospective employers that might come from Company representatives. Dollarhide Decl. ¶ 9. In response, Ms. Dollarhide offered to prepare a neutral letter of reference for Plaintiff and to provide him with an exclusive point of contact in the Human Resources Department who would not supply information beyond dates of service, salary and position held. *Id.*

4

Near the end of the day, Judge Cousins recommended a settlement number and that Ms. Dollarhide draft a neutral reference letter and identify a Human Resources contact for Plaintiff. *Id.* ¶ 10. Ms. Dollarhide drafted that letter in the courtroom and Judge Cousins agreed to print the document for Plaintiff's review. *Id.*; ECF No. 42-3 at Ex. B ("Reference Letter"). Ms. Mercer accepted the number proposed by Judge Cousins. Dollarhide Decl. ¶ 10. Judge Cousins then presented the number and letter to Plaintiff, and Plaintiff accepted. MTD at 14.

Ms. Dollarhide and Ms. Mercer were subsequently informed by Judge Cousins that Plaintiff had agreed to the settlement number and the non-monetary consideration. Dollarhide Decl. ¶ 10; ECF No. 42-4 ("Settlement Agreement"). Ms. Dollarhide then prepared a written settlement agreement in the courtroom that memorialized the terms negotiated by Judge Cousins. Dollarhide Decl. ¶ 11. Judge Cousins took the agreement to Plaintiff and returned it with Plaintiff's signature. Dollarhide Decl. ¶ 11. Ms. Mercer then signed the settlement agreement in Ms. Dollarhide's presence. Dollarhide Decl. ¶ 11. The settlement conference concluded at 4:00 p.m. and Ms. Dollarhide and Mr. Mercer never reconvened with Plaintiff because they left to catch their flights. Dollarhide Decl. ¶ 12.

Ms. Dollarhide declared that Plaintiff appeared to be pleasant during the minimal interactions they had during the course of the settlement conference. Dollarhide Decl. ¶ 13. Specifically, Ms. Dollarhide declared:

> Throughout the course of the settlement conference, I exchanged only pleasantries with Plaintiff. At the outset of the day, he had been locked out of the courtroom, so I opened the door for him and introduced myself to him along with Ms. Mercer. When the parties broke for lunch, we encountered Mr. Nellis and he asked me if I knew of any good lunch spots in the area. I said that I could not assist him because I was not from the area. In both exchanges, Mr. Nellis was pleasant and did not appear to be upset or distraught. Indeed, he appeared calm, prepared with files and documents, and capable of managing his affairs. This was consistent with my prior dealings with him on the phone. After the signing of the settlement agreement and upon leaving the courtroom, I observed Mr. Nellis, who was still in the other room. He did not appear unnerved or upset. There was no indication to me throughout the proceedings that Mr. Nellis was in any way, shape, or form incapable of representing

5

his own interests, as he had apparently been doing for several years in the various actions he had brought against the Company. Had that been the case, I would not have proceeded to negotiate with him through Judge Cousins.

Dollarhide Decl. ¶ 13.

The settlement agreement that both parties signed provided that Defendant would pay Plaintiff a settlement payment of $7,500 and provide a reference letter and a point of contact for future employment related inquiries regarding Plaintiff.[1] *See* Settlement Agreement at Section 1(b). In exchange, Plaintiff agreed to release his claims against Defendant. *Id.* at Section 2(a). In addition, as a condition of the release, Plaintiff promised to voluntarily dismiss the instant case and the Related Action. *Id.* at Section 2(b). Plaintiff initialed each page of the settlement agreement. *See generally id.* The last page of the settlement agreement contains the signature of Plaintiff, Vernon Nellis, the signature of Ms. Mercer, and the date, January 31, 2019. *See id.* at 9.

Thus, on January 31, 2019, Judge Cousins entered a minute entry on the docket that stated:

> Settlement Conference held on 1/31/2019:
> Case settled; dismissal to be filed.
> Plaintiff: Vernon Ells.
> Attorney for Defendant: Mary Catherine Dollarhide.

ECF No. 35.

Plaintiff never moved to voluntarily dismiss the instant action pursuant to the terms of the settlement agreement. Instead, two weeks after Plaintiff had signed the settlement agreement, on February 15, 2019, Plaintiff filed his instant motion to dismiss the settlement agreement. *See* MTD. According to Plaintiff's motion to dismiss, Plaintiff now believes that the settlement agreement should be rescinded for duress, or mistake of fact and law, and fraud. MTD at 13–15. Plaintiff represents in his motion to dismiss that during Plaintiff's first conversation with Judge

---

[1] The terms of the settlement agreement required that the agreement be kept confidential. Settlement Agreement at Section 3(l). However, the settlement agreement specifically contemplated an exception to its confidentiality for enforcement purposes: "This subsection does not prohibit disclosures to the extent necessary legally to enforce this Agreement nor does it prohibit disclosures to the extent otherwise legally required." *Id.* Thus, for purposes of enforcing the settlement agreement, Defendant properly attached the settlement agreement to its motion.

Cousins, Plaintiff "fought off tears with the whole experience being re-lived coupled with having been sexually molested as a child through teen years." MTD at 13–14. Further, Plaintiff takes issue with the fact that, according to Plaintiff, Judge Cousins "stated [that] the Defense counsel was unlikely to go up more and would be filing to dismiss nearly all of the case based on statute of limitations" and that "Judge Cousins had been told by the Defense counsel the right to sue notice[] had expired." *Id.* at 14. Plaintiff also states that "the presence of Judge Cousins and his eagerness to complete the settlement and his own offer sitting in front of the Plaintiff coupled with Judge Cousins stating the Defense had a flight to catch was simply too much pressure. The Plaintiff was under emotional duress and under physical stress from sitting in the room six hours, then having a [sic] Federal Judge Cousins present his own number on the contract and hand a pen to the Plaintiff to sign, the Plaintiff signed feeling extremely pressured and overwhelmed." *Id.* Plaintiff also complains that he went home and could not sleep. Plaintiff also represents that a "legal referral site reached out the next day with two lawyers," and that "one of the lawyers will take the case if the settlement agreement is rescinded." *Id.*

On March 1, 2019, Defendant filed its instant motion to enforce the settlement agreement and opposition to Plaintiff's motion to dismiss. *See* MTE.

On March 8, 2019, Plaintiff filed a declaration in support of his motion to dismiss settlement agreement and in opposition to Defendants' motion to enforce settlement agreement. ECF No. 43.

On March 15, 2019, Plaintiff filed an "opposition to Defendant's motion to enforce settlement agreement and support of motion to dismiss settlement agreement." ECF No. 45. Because of how Plaintiff titled his filing, it is unclear whether this filing is meant to be a reply in support of Plaintiff's motion to dismiss. Moreover, Plaintiff's March 15, 2019 brief is 45 pages. *Id.* Thus, Plaintiff's brief also exceeds the page limits provided by the Civil Local Rules. Civil L.R. 7-3.

Case No. 18-CV-03946-LHK
ORDER DENYING PLAINTIFF'S MOTION TO DISMISS SETTLEMENT AGREEMENT; GRANTING
DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND ORDERING PLAINTIFF TO
EXECUTE AND RETURN THE JOINT STIPULATION OF DISMISSAL WITH PREJUDICE TO DEFENDANT'S
COUNSEL

On March 15, 2019, Plaintiff also filed the declaration of his wife, Olena Nellis, in support of his motion to dismiss the settlement agreement. ECF No. 46.

On March 22, 2019, Defendant filed a reply in support of its motion to enforce the settlement agreement and included in its reply a motion to strike Plaintiff's declarations and evidentiary objections. ECF No. 48. However, because the Court finds for Defendant even after considering Plaintiff's declarations and the material to which Defendant objects, the Court OVERRULES Defendant's motion to strike and evidentiary objections.

On April 4, 2019, Plaintiff filed a document titled "first amended Plaintiff[']s opposition to Defendant['s] motion to enforce settlement agreement and support of motion to dismiss settlement agreement." ECF No. 49. The Court notes that this April 4, 2019 filing is Plaintiff's fourth filing in briefing for Plaintiff's motion to dismiss and Defendant's motion to enforce. The Local Rules provide only that Plaintiff could file his motion to dismiss, a reply in support of his motion to dismiss, and an opposition to Defendant's motion to enforce. Civil L.R. 7-3. Thus, at least one of Plaintiff's filings is unauthorized. Moreover, Plaintiff's April 4, 2019 brief is 51 pages. ECF No. 49. Thus, Plaintiff's brief also exceeds the page limits provided by the Civil Local Rules. Civil L.R. 7-3.

## II. LEGAL STANDARD

District courts have the inherent power to enforce a settlement agreement in an action pending before it. *See TNT Marketing, Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). "The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement." *Woods v. Carey*, 2015 WL 7282749, *4 (E.D. Cal. Nov. 18, 2015). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). This is true even if the underlying cause of action is based upon a federal statute. *Woods*, 2015 WL 7282749 at *4. Thus, the Court applies California law "regarding formation and

United States District Court
Northern District of California

interpretation of contracts in determining whether a legally enforceable settlement agreement was reached." *Id.*

Under California law, the essential elements of a contract are: parties who are capable of contracting; a lawful object; the parties' mutual consent; and sufficient cause or consideration. *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585–86, (2005); *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civil Code § 1550). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Lopez*, 118 Cal. App. 4th at 1230 (citing Cal. Civil Code §§ 1550 and 1565).

## III. DISCUSSION

First, the Court discusses whether the parties entered into an enforceable settlement agreement. Second, the Court addresses Plaintiff's arguments as to why the contract should be rescinded.

### A. The Parties Entered into an Enforceable Settlement Agreement

Based on the parties' submissions, the relevant law, and the record in this case, the Court finds that Defendant has met its burden of demonstrating that the parties entered into a legally enforceable settlement agreement under California law. As an initial matter, the Court notes that in filing his motion to dismiss to rescind the settlement agreement, Plaintiff acknowledged that a settlement agreement was in fact executed. *See* MTD.

First, the parties—Plaintiff and Defendant—"are capable of entering into contract." *Stewart*, 134 Cal. App. 4th at 1585. Pursuant to California Civil Code § 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions apply to Plaintiff or Defendant. Both parties signed the settlement agreement.

Second, the settlement agreement has a "lawful object." *Stewart*, 134 Cal. App. 4th at

9

1586. The settlement agreement seeks to resolve pending litigation, which is a lawful reason to enter into a contract. *Stewart*, 134 Cal. App. 4th at 1586 (explaining that a settlement agreement has a lawful object when its object was to resolve litigation).

Third, the parties mutually agreed to settle this case. *See Lopez*, 118 Cal. App. 4th at 1230 ("An essential element of any contract is the consent of the parties, or mutual assent."). Both Plaintiff and Defendant through Ms. Mercer accepted the terms of the settlement agreement. The terms of the settlement agreement were prefaced with "The Company and I agree as follows" and both parties signed the settlement agreement to demonstrate their mutual assent. Settlement Agreement at 1, 9.

Fourth, the settlement agreement is supported by sufficient consideration. *Stewart*, 134 Cal. App. 4th at 1586. Consideration is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605; *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance, change in legal relations, or a promise."). Here, the settlement agreement provided that Defendant would pay Plaintiff $7,500 and provide a neutral reference letter as well as a point of contact for any future employment related inquiries regarding Plaintiff. *See* Settlement Agreement at Section 1(b). In exchange, Plaintiff agreed to release his claims against Defendant. *Id.* at Section 2(a). In addition, as a condition of the release, Plaintiff promised to voluntarily dismiss the instant case and the Related Action. *Id.* at Section 2(b). Therefore, the settlement agreement is supported by sufficient consideration.

Thus, Defendant has met its burden of demonstrating that the parties entered into a legally enforceable settlement agreement. Moreover, having found all necessary conditions for settlement met, the Court concludes that no evidentiary hearing is needed to determine the terms of the settlement agreement. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("[T]he district court

10

may enforce only complete settlement agreements. Where materials facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." (citations omitted)).

**B. Plaintiff's Arguments Regarding Duress, Mistake of Fact and Law, and Fraud Do Not Provide a Basis to Rescind the Settlement Agreement**

The Court turns next to the issues raised by Plaintiff's motion to dismiss the settlement agreement. Specifically, Plaintiff argues that the settlement agreement should be rescinded for duress, or for mistake of fact and law, and fraud. *See* MTD. The Court considers first Plaintiff's duress arguments. Second, the Court considers Plaintiff's mistake of fact and law and fraud arguments. Based on the parties' submissions, the relevant law, and the record in this case, the Court finds that Plaintiff's arguments regarding duress, mistake of fact and law, and fraud do not provide a basis to rescind the settlement agreement.

**1. Duress**

First, Plaintiff argues that he was under duress to settle. MTD at 13–15. Specifically, Plaintiff claims that he felt pressure from Judge Cousins to settle the case. *Id.* To undo a contract on the basis of duress, one must show "the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Chan v. Lund*, 188 Cal. App. 4th 1159, 1174–75 (2010), *as modified on denial of reh'g* (Oct. 28, 2010). Generally, "duress must emanate from the opposing party to an agreement," "unless the opposing party knows of the duress." *Id.*

For the reasons below, the Court finds that Plaintiff has not shown that the settlement agreement should be rescinded because of duress. First, Plaintiff has not demonstrated that his claimed duress emanated from the Defendant or that Defendant knew of the duress. Second, the record reflects that Plaintiff was willing to settle and had good reasons to settle the case considering the weaknesses of his case. Finally, Plaintiff has not demonstrated that Judge Cousins' actions were coercive.

11

### a. The Claimed Duress Did Not Emanate From Defendant Nor Did Defendant Know of the Duress

First, Plaintiff makes no argument that his claimed duress emanated from Defendant or that Defendant knew of the duress. Defendant and defense counsel had no substantive contact with Plaintiff during the entire settlement conference because Judge Cousins separated the parties and met with each of them individually as he communicated each side's positions and proposed settlement numbers. Dollarhide Decl. ¶¶ 9, 13. Indeed, Plaintiff acknowledges that "at no time were the merits of the case discussed directly between the Defense Counsel and the Plaintiff." MTD at 13. Moreover, Plaintiff makes no argument nor cites evidence that Defendant *knew* of any purported duress. In addition, Defense counsel declared:

> Throughout the course of the settlement conference, I exchanged only pleasantries with Plaintiff. At the outset of the day, he had been locked out of the courtroom, so I opened the door for him and introduced myself to him along with Ms. Mercer. When the parties broke for lunch, we encountered Mr. Nellis and he asked me if I knew of any good lunch spots in the area. I said that I could not assist him because I was not from the area. In both exchanges, Mr. Nellis was pleasant and did not appear to be upset or distraught. Indeed, he appeared calm, prepared with files and documents, and capable of managing his affairs. This was consistent with my prior dealings with him on the phone. After the signing of the settlement agreement and upon leaving the courtroom, I observed Mr. Nellis, who was still in the other room. He did not appear unnerved or upset. There was no indication to me throughout the proceedings that Mr. Nellis was in any way, shape, or form incapable of representing his own interests, as he had apparently been doing for several years in the various actions he had brought against the Company. Had that been the case, I would not have proceeded to negotiate with him through Judge Cousins.

Dollarhide Decl. ¶ 13. Thus, Plaintiff has not shown his claimed duress emanated from Defendant or that Defendant knew of the duress. Accordingly, Plaintiff cannot establish duress or undo the settlement agreement.

### b. Plaintiff Was Willing to Settle and Had Good Reasons to Settle

Moreover, the record reflects that Plaintiff was willing to settle and had good reasons to settle the case considering the weaknesses of his case.

First, early in the settlement conference, Plaintiff indicated "he was tired and would be

12

1  willing to settle as it was very difficult emotionally to relive the pain over and over going through

2  the notes on the case and being reminded of how awful the work was under the supervisor and

3  how painful it was to endure the sexual harassment from the co-worker." MTD at 13.

4       Second, Plaintiff attempted to bring the instant putative class action pro se, which he could

5  not successfully do because Plaintiff cannot represent a class pro see. Indeed, several courts have

6  dismissed class claims brought by pro se litigants at the screening or motion to dismiss stage

7  because pro se plaintiffs cannot represent and protect the interests of the class fairly and

8  adequately. Fed. R. Civ. P. 23; *see, e.g.*, *Arista Records v. Sanchez*, 2006 WL 5908359, at *2 (CD.

9  Cal. Mar. 1, 2006) (granting a motion to dismiss plaintiff's class action counterclaim because the

10  plaintiff "may not represent a class while appearing pro se"); *Jaffe v. Capital One Bank*, 22010

11  WL 691639, at *11 (S.D.N.Y. Mar. 1, 2010) (striking a pro se attorney's class claims pursuant to

12  Fed. R. Civ. P. 23(d)(1)(D) prior to class certification); *Parker v. Deputy Bureau Chief Werdal*

13  *Luryd*, 2016 WL 7007480, at *3 (D. Del. Nov. 28, 2016) (dismissing class action claims pursuant

14  to Section 1915 for failure to demonstrate that pro se inmate litigant could adequately protect the

15  interests of the class); *Welsh v. Lebanon Cty. Prison*, 2013 WL 704470, at *4 (M.D. Pa. Feb. 6,

16  2013), report and recommendation adopted, 2013 WL 704448 (M.D. Pa. Feb. 26, 2013) (same);

17  *Sacaza-Jackson v. Aviles*, 2007 WL 38905, at *3 (D.N.J. Jan. 4, 2007) (same); *Carter v. Heyns*,

18  2013 WL 1681430, at *4 (W.D. Mich. Apr. 17, 2013) (declining to grant class certification to pro

19  se litigant at the initial screening stage pursuant to Section 1915 because "it is well established that

20  pro se litigants are inappropriate representatives of the interests of others"); *Wolters v. Attorney*

21  *Gen., N. Y. State*, 2012 WL 1416706, at *2 (E.D.N. Y. Apr. 24, 2012) (denying pro se plaintiff's

22  request for class certification because "[i]t is well-established that a pro se plaintiff cannot bring a

23  class action"). Thus, Plaintiff's class claims faced likely dismissal.

24       Moreover, Plaintiff acknowledged that he could not bring his class claims pro se in the

25  September 26, 2018 and October 31, 2018 joint case management statement. ECF Nos. 20 & 26.

26

27  Case No. 18-CV-03946-LHK
ORDER DENYING PLAINTIFF'S MOTION TO DISMISS SETTLEMENT AGREEMENT; GRANTING
DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND ORDERING PLAINTIFF TO
28  EXECUTE AND RETURN THE JOINT STIPULATION OF DISMISSAL WITH PREJUDICE TO DEFENDANT'S
COUNSEL

In the September 26, 2018, joint case management statement, Plaintiff wrote: "[t]he failure to identify competent class counsel as required to maintain a class action is not a lack of desire but a lack of sufficient time once understood it was necessary for a class action." ECF No. 20 at 9–10. In the October 31, 2018, joint case management statement, Plaintiff wrote: "[t]he Plaintiff met with a Pro per counsel at the Federal courthouse who advised the Plaintiff would need an Attorney to represent the class." ECF No. 26 at 9.

Third, as is discussed further below in Section III.B.2., the DFEH closed Plaintiff's discrimination case for the following reason: "Investigated and Dismissed – Insufficient Evidence," and gave Plaintiff notice on April 7, 2017 that he had 90 days to file suit on any of his claims brought pursuant to federal discrimination laws. ECF No. 1-1, Ex. 12. However, Plaintiff did not file the instant lawsuit until almost five months later, on September 5, 2017. Thus, Plaintiff's federal discrimination claims faced possible dismissal for lack of timeliness.

Fourth, the Labor Commissioner had already evaluated Plaintiff's Labor Code claims, which overlap with the claims in the instant litigation, and found those claims to be lacking. Thus, the Labor Commissioner only awarded Plaintiff $195.22 in unpaid overtime and double premium wages, along with $22.30 for interest pursuant to California Labor Code § 98.1, for a total award of $217.52. *See* Labor Commissioner Order. By contrast, the settlement agreement provided that Plaintiff would receive $7,500, which is significantly greater than the Labor Commissioner's award of $217.52. Moreover, assuming Plaintiff's case went forward as a class action and even settled as a class action, the Ninth Circuit has established $5,000 as a reasonable benchmark award for representative plaintiffs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Coupled with the Labor Commissioner's $217.52 evaluation of Plaintiff's individual labor claims, Plaintiff may have only received $217.52 plus $5,000 for his Labor Code claims.

Finally, the record reflects that during the settlement conference, Plaintiff expressed

14

concerns about his reputation and potential negative reports to prospective employers that might come from Company representatives. Thus, in response, Defendant's counsel offered to prepare a neutral letter of reference for Plaintiff and to provide him with an exclusive point of contact in the Human Resources Department. Dollarhide Decl. ¶ 9. Accordingly, the record reflects that Plaintiff had good reasons to settle the case considering the weaknesses of his case.

Moreover, the record also reflects that after Plaintiff obtained his settlement, he received word that an attorney may agree to represent Plaintiff's class action if the settlement agreement was rescinded. Thus, Plaintiff's instant motion to dismiss may be the result of buyer's remorse because Plaintiff may now have possible representation, and Plaintiff wants to see if he will receive more money. However, buyer's remorse does not constitute a basis for rescinding a settlement agreement. *See, e.g.*, *Newkirk v. Vill. of Steger*, 536 F.3d 771, 775 (7th Cir. 2008) ("Buyer's remorse, however, cannot undo a contract to which all parties have given their assent and for which all of the conditions precedent have been fulfilled."); *Holt v. MacArthur*, 2014 WL 940327, at *20 (S.D. Cal. Mar. 10, 2014) ("Plaintiff's Opposition to defendants' Motion to Enforce appears to be based on a case of buyer's remorse, which is not grounds for overturning the Agreement reached on August 27, 2012.").

### c. Judge Cousins' Actions Were Not Coercive Nor is Plaintiff's Claimed Duress Reasonable

Finally, Plaintiff has not demonstrated that Judge Cousins' actions were coercive or that Plaintiff's claimed duress is reasonable. *See Chan*, 188 Cal. App. 4th at 1174–75 (holding that to undo a contract on the basis of duress, one must show "the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure."). Here, Plaintiff's purported duress focuses on Plaintiff's own personal stress related to him thinking about his supervisor and sexual harassment from a co-worker, which is related to the instant lawsuit, and from "having been sexually molested as a child through teen years," which is unrelated to the instant lawsuit. MTD at 13–14. However, Plaintiff

15

1   initiated the instant lawsuit and would have to relive the details of his case in pursuing his claims

2   regardless of the stage of litigation. Moreover, Plaintiff is a sophisticated litigant who has

3   represented himself pro se in not just the instant action, but also before the Labor Commissioner

4   (beginning March 18, 2016), the DFEH (beginning April 7, 2017), and in the Related Action

5   (beginning February 22, 2017).

6       Plaintiff also claims pressure from the "presence of" Judge Cousins. *Id.* at 14. However,

7   the actions that Plaintiff represents Judge Cousins took are not coercive. Judge Cousins spoke

8   individually with Plaintiff and Defendant and provided each side with the other's position. Judge

9   Cousins, in his role as mediator at the settlement conference, explained to Plaintiff the Defendant's

10  position about the strength of Plaintiff's case and also explained that Defendant's arguments had

11  merit. *Id.* This is exactly what was expected of Judge Cousins in conducting the settlement

12  conference. *See* ADR L.R. 7 (explaining that during a settlement conference "[a] judicial officer,

13  usually a magistrate judge, helps the parties negotiate" and that the magistrate judge "might

14  articulate views about the merits of the case or the relative strengths and weaknesses of the parties'

15  legal positions."). It is of no matter that Plaintiff does not agree with Judge Cousins' assessment of

16  Plaintiff's case. *See, e.g.*, *Gevas v. Ghosh*, 566 F.3d 717, 720 (7th Cir. 2009) ("Even if we accept

17  Gevas's account of the magistrate judge's conduct, he does not show that the judge coerced a

18  settlement. Gevas asserts not that the judge threatened to penalize him if he refused to settle, but

19  only that he prematurely and disparagingly assessed the merits of his claim. Gevas may disagree

20  with that assessment, but frank disagreement does not constitute coercion.").

21      Moreover, Plaintiff explains that it was his own exhaustion and perceptions of Judge

22  Cousins that caused the duress, not Judge Cousins' actions. Early in the settlement conference,

23  Plaintiff indicated "he was tired and would be willing to settle as it was very difficult emotionally

24  to relive the pain over and over going through the notes on the case and being reminded of how

25  awful the work was under the supervisor and how painful it was to endure the sexual harassment

26

27  16

Case No. 18-CV-03946-LHK
ORDER DENYING PLAINTIFF'S MOTION TO DISMISS SETTLEMENT AGREEMENT; GRANTING
28  DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; AND ORDERING PLAINTIFF TO
EXECUTE AND RETURN THE JOINT STIPULATION OF DISMISSAL WITH PREJUDICE TO DEFENDANT'S
COUNSEL

from the co-worker." MTD at 13.

However, two weeks after the settlement conference, Plaintiff claimed that: "[t]he Plaintiff under emotional duress and under physical stress from sitting in the room six hours, then having a [sic] Federal Judge Cousins present his own number on the contract and hand a pen to the Plaintiff to sign, the Plaintiff signed feeling extremely pressured and overwhelmed." *Id.* at 14.

Plaintiff's representations are directly contradicted by Plaintiff's declarations under penalty of perjury in the settlement agreement. Specifically, when Plaintiff signed the settlement agreement, Plaintiff agreed to section 5, which provided that "before signing this agreement, I was given a reasonable period of time in which to consider this Agreement. I waive any right I might have to additional time within which to consider this Agreement." Settlement Agreement at Section 5. In section 5, Plaintiff further acknowledged: "(1) I took advantage of the time I was given to consider this Agreement before signing it; (2) I carefully read this Agreement; (3) I fully understand it; (4) I am entering into it voluntarily; (5) I am receiving valuable consideration in exchange for my execution of this Agreement that I would not otherwise be entitled to receive; and (6) the Company, by this writing, encouraged me to discuss this Agreement with my attorney (at my own expense) before signing it, and that I did so to the extent I deemed appropriate." *Id.* Finally, in the settlement agreement, Plaintiff declared: "I declare under penalty of perjury and under the laws of the State of California and the United States of America that the representations I am making herein are true and correct to the best of my knowledge." Settlement Agreement at 9.

Plaintiff's allegations about Judge Cousins' actions do not constitute coercion. Moreover, the Court cannot find that a reasonably prudent person faced with no reasonable alternative would succumb to Judge Cousins' alleged pressure. Thus, the Court concludes that Plaintiff's claimed duress does not constitute a basis to rescind the settlement agreement.

## 2. Mistake of Fact and Law or Fraud

Plaintiff argues that there was a mistake of fact and mistake of law or fraud on the court.

17

MTD at 13–15. Specifically, Plaintiff takes issue with the fact that Judge Cousins reported to Plaintiff that Defendant would have raised a statute of limitations defense and that Defendant's defense would result in most of Plaintiff's case being dismissed. *Id.* Plaintiff also appears to take issue with any general commentary regarding the strength of his case. *Id.*

The Court finds that there is no mistake of fact and law or fraud. As an initial matter, Plaintiff presents no evidence except his own declaration that such information was presented as described by Plaintiff. Nonetheless, even if the information was presented as Plaintiff described, Judge Cousins was permitted to weigh in on the strength of Plaintiff's case. *See* ADR L.R. 7 (explaining that during a settlement conference "[a] judicial officer, usually a magistrate judge, helps the parties negotiate" and that the magistrate judge "might articulate views about the merits of the case or the relative strengths and weaknesses of the parties' legal positions.").

Moreover, everything Judge Cousins allegedly represented to Plaintiff is grounded in the facts of this case. The facts demonstrate that Defendant did have a viable statute of limitations defense. The DFEH's Notice of Right to Sue, issued on April 7, 2017, stated that any claim brought pursuant to federal discrimination laws, including Title VII of the Civil Rights Act, the ADA, the GINA, or the ADEA, would need to be filed within 90 days of the date Plaintiff received the notice. ECF No. 1-1, Ex. 12. However, Plaintiff did not bring the instant suit until September 5, 2017, almost five months later. Had litigation in the instant suit continued, Plaintiff would have likely faced a statute of limitations challenge on at least some of his claims.

Moreover, there were weaknesses in Plaintiff's case. Specifically, the Labor Commissioner evaluated Plaintiff's Labor Code claims on an individual basis and found those claims to be lacking. For example, the Labor Commissioner awarded Plaintiff a total of 6.64 hours of allegedly uncompensated overtime wages, plus interest, which Defendant did not contest at the hearing. *See* Labor Commissioner Order at 5. Moreover, the Labor Commissioner stated that:

> Plaintiff was responsible for entering his hours worked. Plaintiff admitted sometimes he forgot to enter his overtime hours. Plaintiff did not submit records of overtime

18

United States District Court
Northern District of California

hours to Defendant worked [sic] (by means of an evidentiary exhibit) until the date of the hearing. Defendant had no way of conceding or contesting the claimed amount until the hearing. Accordingly, . . . Plaintiff shall take nothing as liquidated damages.

*Id.* at 8.

The Labor Commissioner also found that Plaintiff had not established a violation of California's meal period requirements:

Defendant regularly discussed employees' obligation to take meal periods at its group meetings. [Plaintiff's manager] regularly reminded employees to take meal periods. Coworker Alcazar testified he never had an issue taking a meal period. Defendant has a form for employees to submit if they miss a meal period or take a late meal period so that they can be paid premium pay. Based on these facts, Defendant has met its obligation to provide meal periods, and Plaintiff shall take nothing as meal period premiums.

*Id.* at 6.

Finally, with respect to rest periods, the Labor Commissioner found that:

Employees were reminded to take rest periods at staff meetings. Several break rooms are available. While Plaintiff may have worked through some rest periods, Plaintiff has not met his burden [to show that] he was not authorized and permitted rest periods. Accordingly, Plaintiff shall take nothing as rest period premiums.

*Id.* at 7.

The Labor Commissioner only awarded Plaintiff $195.22 in unpaid overtime and double premium wages, along with $22.30 for interest pursuant to California Labor Code § 98.1, for a total award of $217.52. *See* Labor Commissioner Order.

In sum, the decision of the Labor Commissioner specifically evaluated Plaintiff's Labor Code claims and determined that Plaintiff would take only $217.52.

Even if this information had been presented to Judge Cousins during the settlement conference or even if Judge Cousins had discussed this information with Plaintiff, the Court finds that there would be no mistake of fact and law or fraud.

### 3. Summary

In sum, Plaintiff has not demonstrated that the settlement agreement should be rescinded for duress, or for mistake of fact and law, and fraud.

19

Instead, the record shows that Plaintiff brought a putative class action pro se, and that he had not found any counsel to take his case prior to or during the settlement conference. Plaintiff indicated to Judge Cousins that Plaintiff was "he was tired and would be willing to settle as it was very difficult emotionally to relive the pain over and over going through the notes on the case and being reminded of how awful the work was under the supervisor and how painful it was to endure the sexual harassment from the co-worker." MTD at 13. Plaintiff and Defendant each met with Judge Cousins individually as Judge Cousins went back and forth between the parties to convey their separate settlement positions. Both parties agreed to the $7,500 settlement figure, which is substantially greater than the $217.52 award that the Labor Commissioner awarded for Plaintiff's Labor Code claims, as well as the neutral reference letter in exchange for Plaintiff's dismissal of his lawsuits. The terms of the settlement agreement were recorded on paper, and both parties signed the settlement agreement. Plaintiff was pleasant during his minimal and non-substantive interactions with Defendant during the settlement conference. The record further reflects that Plaintiff then went home and later heard from counsel who agreed to represent Plaintiff's class action if the settlement agreement was rescinded. Two weeks after executing the settlement agreement, instead of dismissing his case, Plaintiff filed a motion to dismiss the settlement agreement. These facts do not support rescission of the settlement agreement. Instead, they support a finding that Plaintiff has buyer's remorse, which does not constitute a basis to rescind the settlement agreement. *See, e.g.*, *Newkirk*, 536 F.3d at 775 (7th Cir. 2008) ("Buyer's remorse, however, cannot undo a contract to which all parties have given their assent and for which all of the conditions precedent have been fulfilled."); *Holt*, 2014 WL 940327, at *20 ("Plaintiff's Opposition to defendants' Motion to Enforce appears to be based on a case of buyer's remorse, which is not grounds for overturning the Agreement reached on August 27, 2012.").

Finally, the Court notes that Plaintiff did not request an evidentiary hearing. *See, e.g.*, *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994) ("By failing to request an

evidentiary hearing in the district court, the defendants waived their right to raise the issue on appeal."). Regardless, because there is no factual dispute concerning the settlement agreement's existence or terms, the Court need not provide Plaintiff with an evidentiary hearing. *Cf. Callie*, 829 F.2d at 890 ("Where materials facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.").

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to enforce the settlement agreement is GRANTED. Plaintiff's motion to dismiss the settlement agreement is DENIED. Pursuant to the settlement agreement, the Court orders that Plaintiff execute and return, by July 8, 2019, the Joint Stipulation of Dismissal with Prejudice to Defendant's counsel for filing with this Court.

The Court CONTINUES the case management conference currently set for July 10, 2019 to July 18, 2019, at 1:30 p.m. By July 10, 2019, Defendant shall file notice with the Court of Plaintiff's compliance or noncompliance with the instant Order. If Plaintiff fails to comply with the instant Order and the settlement agreement, the Court will sua sponte dismiss Plaintiff's case with prejudice.

The Court DENIES AS MOOT Defendant's request to continue the hearing on the motion to enforce and the motion to dismiss. ECF No. 53.

**IT IS SO ORDERED.**

Dated: July 1, 2019

*Lucy H. Koh*

_____
LUCY H. KOH
United States District Judge